IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LYDIA G.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 3:22-cv-00810-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Lydia G. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and supplemental security income ("SSI") under Title XVI. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c). EFC No. 12. For the reasons provided below, the Commission's decision is AFFIRMED.

**PROCEDURAL BACKGROUND**

Plaintiff applied for DIB and SSI benefits on May 23, 2019, alleging an onset date of December 31, 2017. Tr. 78, 204, 208.[2] Plaintiff's applications were denied initially on August

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

[2] "Tr." Citations are to the Administrative Record. ECF No. 11.

1 - Opinion and Order

12, 2019, and again on reconsideration on March 19, 2020. Tr. 88, 98. A hearing was held before an Administrative Law Judge ("ALJ") on February 12, 2021. Tr. 34-75. On May 5, 2021, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 13-28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff now seeks review of the ALJ's opinion.

## FACTUAL BACKGROUND

Plaintiff was forty-eight years old on her alleged onset date. Tr. 78. She does not have a high school diploma or a GED, and has worked at various retail stores and restaurants, including Cracker Barrel, Office Depot, Costco, and Rogue Creamery. Tr. 42, 44, 54, 55, 580. Plaintiff alleges disability based on migraines and arthritis in her hips and one knee. Tr. 78.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari,* 262 F.3d 949, 954-55 (9th Cir. 2001).

3 - Opinion and Order

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

At step one, the ALJ found that claimant has not engaged in substantial gainful activity since her alleged onset date. Tr. 16. At step two, the ALJ found that Plaintiff has the following severe impairment: migraines. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 19. The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> The claimant can lift and/or carry 20 pounds frequently and 25 pounds occasionally; can stand and/or walk for about 6 hours total in an 8-hour workday, and sit for about 6 hours total in an 8-hour workday. She can frequently balance, stoop, knee, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds, or work at unprotected heights; can tolerate occasional exposure to loud noise . . . and no more than frequent exposure to atmospheric conditions[.]

4 - Opinion and Order

Tr. 20. At step four, the ALJ determined that Plaintiff could perform her past relevant work of "a composite job consisting of a printer . . . and cashier II"; creamery retail store manager; Costco demonstrator; file clerk; and fast-food manager. Tr. 27. Because the ALJ found the Plaintiff could perform her past relevant work, she did not reach step five. Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a

5 - Opinion and Order

reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Commissioner] did not invoke in making its decision." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) improperly discrediting her subjective symptom testimony, and (2) improperly rejecting the medical opinion of Plaintiff's primary care practitioner, Dr. Lauralyn Carter-Meletic.

### I.  Subjective Symptom Testimony

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. Plaintiff argues that the ALJ's reasons for rejecting her testimony were not clear and convincing reasons supported by substantial evidence.

6 - Opinion and Order

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in the individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2017 WL 518034, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff testified that she suffers from headaches almost every day, and from migraines three to four times a week. Tr. 44, 46. She gets vertigo "at least a couple of times a week" and

7 - Opinion and Order

nausea and vomiting "[t]here to four times a week." Tr. 46. Plaintiff works parttime at Cracker Barrel and explained that she can only work in the morning as her headaches get worse in the afternoon. Tr. 48. She explained that she "always showed up for work but then I'd ask to leave because I've had migraines going into work," and that she's had to leave her shift early about twenty times in three years. Tr. 43.

The ALJ found Plaintiff's testimony regarding her limitations inconsistent with her lack of regular, ongoing medical treatment, including her failure to follow her doctor's recommendations, and her activities of daily living. Tr. 22. Plaintiff argues that neither of the ALJ's reasons are supported by substantial evidence in the record.

### A.     Treatment History and Doctor's Recommendations

In some circumstances, a claimant's treatment record can form the basis upon which to reject a claimant's testimony. *See, e.g., Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (noting that "conservative treatment" was sufficient to discount the claimant's testimony regarding allegedly disabling pain); *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) ("[A] claimant's failure to assert a good reason for not seeking treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.") (citation omitted). However, ALJs are required to consider "any explanation that the individual may provide, or other information in the case record, that may explain" the claimant's failure to follow a treatment plan. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quotation omitted).

The ALJ observed that Plaintiff "has not sought any regular, ongoing care for her migraines," Tr. 23, which is supported by substantial evidence in the record. When Plaintiff first established care with her current primary care physician, Dr. Carter-Meletich, in May of 2018, it was for issues with her arm, not migraines. Tr. 400. Plaintiff saw Dr. Carter-Meletich for

migraines in August 2018, but not again until February 2019. Tr. 246. Her next migraine appointment was in April 2019, followed by a meeting with a neurologist in June 2019. Tr. 386, 528. Her next appointment was in September of that year, but only to drop off her disability paperwork. Tr. 564. This sporadic pattern continues in her medical record. *See, e.g.,* Tr. 590 (appointment in December 2019); 597 (appointment in January 2020); 611 (appointment March 2020); 652 (appointment October 2020).[3]

The ALJ also noted that Plaintiff did not start taking medications for her migraines until February 2019, almost two years after her alleged onset date, and she did not follow her doctor's instructions regarding such medications. *See Molina*, 674 F.3d at 1113 ("[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained . . . to follow a prescribed course of treatment."); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (an ALJ may reject plaintiff's testimony of disabling limitations or pain if plaintiff failed to seek treatment or failed to follow a prescribed course of treatment without a good reason). In her first appointment, Dr. Carter-Meletich noted that Plaintiff "has stopped all preventative medications [for her migraines] because she did not feel they really helped. She will take Excedrin Migraine if the pain is bad enough." *Id.* In August of 2018, Plaintiff again told her doctor that she "stopped taking medications for [migraines] because she prefers to just let them resolve on their own." Tr. 397.

---

[3] Plaintiff testified that the gap in appointments from March 2020 through October 2020 was due to the COVID 19 pandemic. If this was the only gap in treatment, the pandemic would be adequate explanation for failing to seek treatment. *See cf. Molina*, 674 F.3d at 1113 ("[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). But the other gaps in treatment have no such explanation.

9 - Opinion and Order

In June 2019, Plaintiff saw Dr. Carlini, a neurologist. Tr. 528. In his notes, Dr. Carlini wrote, "[d]istressingly, [Plainitiff] has continued to use Maxalt to treat her migraines even though I expressly instructed both her and her former [primary care physician] that Maxalt is contraindicated." Tr. 528. After that appointment, Plaintiff did stop taking Maxalt as recommended by Dr. Carlini. Tr. 385. Then in January 2020, Plaintiff returned to Dr. Carlini and he recommended she work with Dr. Carter-Meletich to "[i]ncrease amlodipine to 10mg daily." Tr. 591. Plaintiff then reported to Dr. Carter-Meletich that Dr. Carlini "recommended an increase in dose of Amlodpine *or Topiramate* to help prevent migraines," even though he expressly instructed her to increase Amlodpine only. Tr. 597 (emphasis added). Plaintiff explained she wanted to increase her Topiramate because she had accidentally taken an increased does which resulted in "a dramatic decrease in the number of migraines." Tr. 597.

Such inconsistent adherence to prescribed treatments is a clear and convincing reasons for discounting Plaintiff's pain testimony and is supported by substantial evidence. *See Abrahamson v. Saul*, 818 F. App'x 718, 721 (9th Cir. 2020) ("The incongruity between [claimant's] testimony and the medical evidence, as well as his sporadic adherence to prescribed treatment are clear and convincing reasons for the ALJ to conclude [claimant's] testimony overstated his symptoms and limitations."). Thus, the ALJ did not err in discrediting Plaintiff's testimony.

### B.   Activities of Daily Living

Activities of daily living can also form the basis for an ALJ to discount a claimant's testimony in two ways: (1) where the activities "contradict [a claimant's testimony]"; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability

10 - Opinion and Order

benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

The ALJ agreed that "claimant's migraines are longstanding," but that her ability to work at Cracker Barrel undermined her testimony regarding her migraines debilitating effects. Tr. 23. Specifically, the ALJ noted that although Plaintiff "testified she has had to leave work early due to a migraine, and receives accommodations, there is no support for this in the record." *Id.* Plaintiff did not provide any documentation from Cracker Barrel regarding any accommodations or that she was regularly permitted to leave work early. *See* 20 C.F.R. § 404.1512(a)(1) ("In general, you [the claimant] have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled[.]"); 20 C.F.R. § 404.1513(a)(3) (stating that evidence considered includes "any information or statement(s) from nonmedical source (including you) about any issues in your claim.").

To the contrary, the medical record contained evidence that Cracker Barrell was pleased with Plaintiff's work and gave her raises. Tr. 529. Such evidence is incongruent with Plaintiff's testimony that she was seeking accommodations from her employer and leaving work early. As noted by the ALJ, "if she was leaving work at the level alleged, she would be seeking some type of treatment, or her employer would be seeking some type of substantiation of her issue." Tr. 23. Such inconsistencies are clear and convincing reasons for discrediting Plaintiff's testimony and supported by substantial evidence in the record. *See Molina*, 674 F.3d at 1111 (holding that when

11 - Opinion and Order

the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion when it is supported by reasonable inferences drawn from the record).

## II. Medical Opinion

Finally, Plaintiff argues that the ALJ improperly rejected the medical opinion of Plaintiff's primary care physician, Dr. Carter-Meletic. Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed her applications after March 27, 2017, therefore the Commissioner's new regulations apply.

The new rules no longer provide inherent weight be given to any particular opinion or finding: "[The Commissioner] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The Commissioner must consider each medical opinion and determine which medical opinions are most persuasive. 20 C.F.R. §§ §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors; the two most important factors are supportability and consistency. *Id.* Secondary factors include relationship with the claimant, specialization, length of treatment relationship, frequency of examination, and others. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Dr. Carter-Meletich provided two opinions, one on September 3, 2019, and another on December 4, 2020. Tr. 575, 638. In her first opinion, Dr. Carter-Meletich reported that Plaintiff

12 - Opinion and Order

has headaches seven days a week and reported that her headaches last for twenty-four hours each time. Tr. 575. She opined that Plaintiff was capable of low-stress work and that "she has been working at a low stress job but continues to have migraine symptoms despite lower stress environment," that Plaintiff would need two fifteen-to-twenty-minute breaks daily, that she "is unable to work full time[, w]orks 3 days per week; 5 hours per day," and that she would be "off-task" at least fifteen percent of an eight hour workday due to her symptoms. Tr. 576-77. In her second opinion, she reported that Plaintiff has headaches "5-6 days a week," "20-26 days per month," that last "8-10 hours." Tr. 638. Otherwise, the opinion matched the one offered in September 2019. Tr. 638-40.

The ALJ found both of Dr. Carter-Meletich's opinions not persuasive because they were primarily based on Plaintiff's own reports, which the ALJ found inconsistent with the medical record, as explained above. Tr. 26-27. "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been properly discounted.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair*, 885 F.2d at 605). Given that the ALJ's rejection of Plaintiff's testimony was supported by substantial evidence, the same is true here.

The ALJ also found Dr. Carter-Meletich's opinion not persuasive because it was inconsistent with Plaintiff's positive response to Topamax. Tr. 26-27. In January 2020, at Plaintiff's request, Dr. Carter-Meletich increased Plaintiff's Topamax to 300 mg daily. Tr. 597. In March 2020, Plaintiff returned to Dr. Carter-Meletich with daily nosebleeds. Tr. 611. Dr. Carter-Meletich noted that Plaintiff "looked at the side effects of Topamax and thinks that might be causing the problem, but she does not want to stop taking it at this time," as her headaches

13 - Opinion and Order

had improved. Tr. 611. Plaintiff did not return to medical providers complaining of migraines until March 2020, when her migraine was triggered by alcohol. Tr. 620.

Improvement with treatment is a germane reason supported by substantial evidence to find a medical opinion not persuasive. *See De Herrera v. Astrue*, 3782 F'Appx 771, 773 (9th Cir. 2010) (upholding ALJ's rejection of medical opinion when "treatment seemed to improve [claimant's] condition, and that [medical opinion] was based on [claimant's] subjective complaints"). Accordingly, the ALJ did not err in rejecting Dr. Carter-Meletich's medical opinion.

## ORDER

The ALJ did not err. The decision is AFFIRMED.

It is so ORDERED and DATED this 12 day of September, 2023.

_____
MARK D. CLARKE
United States Magistrate Judge